```
                IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| GEORGE GREEN,<br><br>      Plaintiff,<br><br>   v.<br><br>JO ANNE B. BARNHART,<br>COMMISSIONER OF<br>SOCIAL SECURITY<br>ADMINISTRATION,<br><br>      Defendant. | HONORABLE JEROME B. SIMANDLE<br><br>CIVIL NO. 05-3542<br><br><u>**OPINION**</u> |

APPEARANCES:

Mr. George Green
55 Sunset Road
Apt. 309
Willingboro, NJ 08046
    Plaintiff <u>Pro Se</u>

Christopher J. Christie
United States Attorney
    By:  Kimberly L. Shiro
        Special Assistant United States Attorney
Social Security Administration
Office of the General Counsel
26 Federal Plaza, Suite 3904
New York, NY 10278
    Attorney for Defendant

**SIMANDLE**, District Judge:

    This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to review the final decision of the Commissioner of the Social Security Administration (the "Commissioner"), to terminate plaintiff, George Green's ("Plaintiff") Disability Insurance Benefits under Title II of the Social Security Act.  42 U.S.C. §

401, et seq. Plaintiff seeks reversal of the Commissioner's decision finding that Plaintiff's disability ceased as of August, 2002. This Court must determine whether the administrative law judge's determination that Plaintiff was able to perform his past relevant work as a tutor and, thus, was not disabled was proper and supported by substantial evidence. For the reasons stated below, this Court will affirm the decision of the Commissioner denying Plaintiff's application for Disability Insurance Benefits.

**I.    BACKGROUND**

    **A.    Procedural History**

On June 9, 1992, Plaintiff, George Green, filed an application for Disability Insurance Benefits ("DIB") alleging disability due to psychiatric and adjustment disorders. The claim was granted on March 8, 1993 with the Commissioner determining that Plaintiff's disability onset date was January 1, 1992. (Tr. at 26-28.)

In January of 2002, the Commissioner of Social Security (the "Commissioner") conducted a continuing disability review of Plaintiff. (Tr. at 29-36). On October 11, 2002, Plaintiff was informed by the Commissioner that he was no longer entitled to DIB. (Tr. at 54.) On October 21, 2002, Plaintiff filed a request for reconsideration. In a letter dated November 25, 2003, the Commissioner summarized the report by a disability

hearing officer who reviewed Plaintiff's file and medical records[1] and held a hearing on October 24, 2003.  (Tr. at 58-65.)  The letter also informed Plaintiff that the Commissioner was denying Plaintiff's request for reconsideration.  (Id.)

On December 3, 2003, Plaintiff requested a hearing before an administrative law judge in which he alleged that "the facts given in the assessment were distorted" and that Plaintiff continued to be unable to work.  (Tr. at 80.)  An administrative hearing was held on July 26, 2004 before administrative law judge Joseph A. Hillegas ("ALJ Hillegas").  (Tr. 294-328.)  At the hearing before ALJ Hillegas, Plaintiff appeared with counsel (Alan Polonsky, Esq.) and testified on his own behalf.  Also testifying on behalf of Plaintiff was Dr. Richard W. Cohen, a medical expert.  (Tr. at 262-66, 325-27.)  In his decision, ALJ Hillegas identified the specific issue before him as "whether there has been any medical improvement in [Plaintiff's] impairment(s) since the most recent determination that he was disabled or whether one of the exceptions to medical improvement applies, and whether he can engage in substantial gainful

---

[1] The Disability Hearing Officer's Decision lists all of the medical evidence and doctor's reports that the officer reviewed in connection with Plaintiff's appeal.  (Tr. at 68-74.) In short, the Disability Hearing Office found that Plaintiff (1) was not engaging in substantial gainful activity, (2) his impairments do not meet or equal a current listed impairment, (3) there has been medical improvement of claimant's impairments since 1992, and that (4) "[c]urrently, the claimant has no mental limitations."  (Tr. at 73-75.)

3

activity." (Tr. at 14.)  Ultimately, ALJ Hillegas found that Plaintiff's disability ceased and that he was able to work as of 2002. (Tr. 14-15.)  On October 21, 2004, Plaintiff requested that the Appeals Council review ALJ Hillegas' decision.  (Tr. at 10).  On February 4, 2005, the Appeals Council denied Plaintiff's request for review.  (Tr. at 7-10.)  This action followed.

### B. The Administrative Law Judge's Decision

As discussed above, ALJ Hillegas identified the specific issue as "whether there has been any medical improvement in [Plaintiff's] impairment(s) since the most recent determination that he was disabled or whether one of the exceptions to medical improvement applies, and whether he can engage in substantial gainful activity." (Tr. at 14.)  Ultimately, ALJ Hillegas concluded that there has been "medical improvement of [Plaintiff's] impairment, related to his ability to work, as of August 2002, and that he no longer continues to be disabled under Section 216(I) and 223, respectively the Social Security Act." (Tr. at 14-15.)

In reaching this conclusion, ALJ Hillegas reviewed records from Dr. Lewis Alban, Ph.D. (who performed a consultative exam on January 13, 2002), Dr. Judith Adams, M.D. (who performed a consultative exam on December 26, 2002), Dr. Kenneth Brait, (who performed a consultative exam on July 27, 1999 and again on October 26, 1999), Dr. Sandra Koffler (a psychologist who

4

performed a neuropsychological evaluation of Plaintiff and administered an intelligence test in 1999) and Ms. Helen Myers, (a therapist who evaluated Plaintiff's mental status and saw Plaintiff on two occasions in June, 2004). (Tr. at 16-19.) In addition, ALJ Hillegas heard testimony from Plaintiff at a hearing on July 26, 2004. (Tr. at 19.) Finally, ALJ Hillegas heard testimony by Dr. Richard Cohen, a medical expert who, after reviewing Plaintiff's file and listening to Plaintiff's testimony, expressed the opinion that Plaintiff (1) suffered from a dysthymic disorder; (2) has only mild restrictions in his ability to perform his daily activities; (3) has moderate restrictions in social function; and (4) seldom had difficulties in his ability to maintain concentration, persistence or pace as a result of his mental impairment. (Id.)

ALJ Hillegas applied the Commissioner's regulations for determining whether a claimant's disability has ceased. (Tr. at 20.) In step one of the eight-step analysis (discussed infra in Section II.B.), the ALJ found that Plaintiff had engaged in substantial activity in the time since the date he was found disabled (January, 1999). Specifically, ALJ Hillegas found that Plaintiff completed a trial work period in June, 2000 (starting in October of 1999 and continuing through June 2000) when Plaintiff worked as a tutor at Burlington County College (Tr. at 44) and an extended period of eligibility began in July, 2000.

(Tr. at 43-52.)  Next, in step two, ALJ Hillegas concluded that Plaintiff's depression was a "severe" impairment, but that this impairment did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.  (Tr. at 20.)  Because Plaintiff's impairment did not meet one of the listed impairments, the ALJ continued to step three in order to determine whether there has been any medical improvement in Plaintiff's impairment.  (Tr. at 16, 20.)  At step three, the ALJ determined that Plaintiff's condition improved since March, 1993 (the appropriate comparison point) and, as required in step four, determined that these medical improvements were related to his ability to work.  (Tr. 19-20.)  Specifically, ALJ Hillegas found that Plaintiff's statements "concerning his impairment and its impact on his ability are not persuasive in light of . . . the reports of the treating and examining physicians and [Plaintiff's] medical history as a whole."  (<u>Id.</u>)

Because, Plaintiff's improvement related to his ability to work, ALJ Hillegas proceeded to step six, in which the ALJ determined that (a) Plaintiff has no exertional limitations but, due to his adjustment disorder, he is only able to work in small group settings where he would have minimal contact with the public.  In making this determination, ALJ Hillegas stated that although Plaintiff may not like interacting with others, he is capable of doing so, citing Plaintiff's testimony that he visits

a senior center to play cards several times a month, he occasionally attends church, and that he performs his own shopping without incident. (Id.) As such, according to ALJ Hillegas, Plaintiff "has no exertional limitations" and as of August, 2002, due to his adjustment disorder, he can only have minimal contact with the general public, limited to small groups. (Id.)

Finally, in step seven, ALJ Hillegas determined that, based upon Plaintiff's residual functional capacity, Plaintiff could perform his past work as a tutor because this type of work did not require the performance of work-related activities precluded by his residual functional capacity. (Id. at 20.)[2] Thus, Plaintiff, according to ALJ Hillegas, was no longer disabled as of August 2002 and his period of disability insurance benefits ceased as of the end of October 2002.

## II. Discussion

### A.  Standard of Review

Under 42 U.S.C. § 405(g), Congress provided for judicial review of the Commissioner's decision to deny a complainant's application for DIB. Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995). A reviewing court must uphold the Commissioner's factual decisions where they are supported by "substantial

---

[2] With ALJ Hillegas' finding at step seven, he did not need to proceed to step eight of the analysis.

evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992). Substantial evidence means more than "a mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. The inquiry is not whether the reviewing court would have made the same determination, but whether the Commissioner's conclusion was reasonable. See Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988).

A reviewing court has a duty to review the evidence in its totality. See Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984). "[A] court must 'take into account whatever in the record fairly detracts from its weight.'" Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting Willbanks v. Secretary of Health & Human Servs., 847 F.2d 301, 303 (6th Cir. 1988) (quoting Universal Camera Corp. V. NLRB, 340 U.S. 474, 488 (1951)).

The Commissioner "must adequately explain in the record his reasons for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)). The Third Circuit has held that an "ALJ must review all pertinent medical evidence and

8

explain his conciliations and rejections." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 122 (3d Cir. 2000). Similarly, an ALJ must also consider and weigh all of the non-medical evidence before him. Id. (citing Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983); Cotter v. Harris, 642 F.2d 700, 707 (3d Cir. 1981). Moreover, apart from the substantial evidence inquiry, a reviewing court is entitled to satisfy itself that the Commissioner arrived at his decision by application of the proper legal standards. Sykes, 228 F.3d at 262; Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983); Curtin v. Harris, 508 F. Supp. 791, 793 (D.N.J. 1981).

**B.   Standard for Disability Insurance Benefits**

The Social Security Act defines "disability" for purposes of an entitlement to a period of disability and DIB as the inability to engage in any substantial gainful activity by reason of any medically determinable physical and/or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). To obtain disability benefits, the claimant bears the burden of showing that he is statutorily disabled by "furnish[ing] such medical and other evidence of the existence thereof as the Commissioner of Social Security may require." 42 U.S.C. § 423(d)(5)(A). As described

supra, this evidence must be "substantial" so as to support a reasonable conclusion of entitlement to disability benefits.

An individual will be determined to be under a disability only if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work . . . .

42 U.S.C. § 423(d)(2)(A).

### C. **Standard for Termination of Benefits**

The Social Security Act provides that an applicant must establish an "inability to engage in any substantial activity by reason of any medically determinable or physical or mental impairment . . . ." 42 U.S.C. § 423(d)(1)(A). An individual's "continued entitlement to [Disability Insurance Benefits] must be reviewed periodically" however. 20 C.F.R. § 404.1594(a). After such periodic review, disability benefits can be terminated. See 42 U.S.C. § 423(f). Under 42 U.S.C. § 423(f):

> A recipient of benefits . . . based on the disability of any individual may be determined not to be entitled to such benefits on the basis of a finding that the physical or mental impairment on the basis of which such benefits are provided has ceased, does not exist, or is not disabling . . . .

Such a finding, however, must be supported by substantial evidence that demonstrates both that: (1) there has been medical

improvement in the individual's impairment (or combination of impairments) which is related to the individual's ability to work and (2) the individual can perform substantial gainful activity. Id. at § 423(f)(1)(A), (B).

A "medical improvement" is defined as "any decrease in the medical severity of [the] impairment(s) which was present at the time of the most recent favorable medical decision that [the claimant] w[as] disabled or continued to be disabled." 20 C.F.R. § 420.1594(b)(1). Such a determination that there has been a decrease in medical severity "must be based on changes (improvements) in the symptoms, signs and/or laboratory findings associated" with the individual's impairment or impairments. Id. For purposes of determining whether medical improvement has occurred, the Commissioner must compare the current medical severity of the impairment with the severity of the impairment at the time of the most recent favorable decision that an individual was disabled (the "comparison point"). Id. at § 420.1594(b)(7). If medical improvement has occurred, the Commissioner then compares the individual's current functional capacity to do basic work activities with the individual's prior residual functional capacity.

In order to assure "that disability reviews are carried out in a uniform manner" and that "any decisions to stop disability benefits are made objectively, neutrally and are fully

11

documented," the ALJ must follow a eight-step process. <u>Id.</u> at § 420.1594(f).  To make these determinations, the Commissioner uses an eight-step analysis:

    (1) Is the beneficiary working?

    (2) If a beneficiary is not working, do his impairments meet or equal the Listings?

    (3) If the beneficiary's impairments do not meet or equal the Listings, has there been any medical improvement? If yes, proceed to step four; if no, proceed to step five.

    (4) Is the medical improvement related to the beneficiary's ability to work? If yes, proceed to step six; if no, proceed to step five.

    (5) If there is no medical improvement, or if the medical improvement is not related to the beneficiary's ability to work, does an exception to medical improvement apply? If an exception does apply, the beneficiary is no longer disabled.

    (6) If medical improvement is related to the ability to work, are all current impairments severe in combination?

    (7) If the impairments are severe, the Commissioner determines the beneficiary's residual functional capacity and considers whether he can do his past work.

    (8) If the beneficiary cannot do his past work, the Commissioner decides whether he can do other work given his residual functional capacity, age, education, and work experience. If the beneficiary can, he is no longer disabled; if not, disability continues.

<u>See</u> § 20 C.F.R. 404.1594(f)(1)-(8); <u>see also</u> <u>Booms v. Comm'r of Soc. Sec.</u>, No. 00-10348, 2001 U.S. Dist. LEXIS 25610, 23-24 (D. Mich. May 1, 2001).

    **C.**    **Plaintiff's Arguments**

12

Appearing pro se, Plaintiff presents a brief in support of his position that the ALJ's finding of non-eligibility was in error. In general, Plaintiff's brief takes issue with the ALJ's characterization of the medical records submitted by three doctors who provided consultative examinations. First, Plaintiff argues ALJ Hillergas' characterization of his disability with respect to the medical reports of Dr. Alban, "falls short of its true nature." (Pl.'s Br. at 1 citing Tr. at 16.) Plaintiff appears to argue that the ALJ's decision that Plaintiff can work with others in a traditional workplace environment is not supported by substantial evidence, arguing that Plaintiff is unable "to reason and function [as] a normal person" with respect to "deal[ing] with individuals who one may or may not enjoy dealing with." (Id.) Furthermore, Plaintiff feels these "mental problem[s]" present an "insurmontable" hurdle to his working in a traditional workplace. Second, Plaintiff argues that the ALJ mischaracterized the conclusion of Dr. Judith Adams that, as of December 26, 2002, Plaintiff's "prognosis was good." (Tr. at 17.) To this end, Plaintiff states that such a characterization was "a misleading statement as to [his] mental stability . . . ." (Pl.'s Br. at 1.) Finally, Plaintiff argues the testimony of Dr. Kenneth Brait, whom Plaintiff saw after he had short term memory problems caused by being hit by a car in 1999, mis-

13

characterized his impairments by labeling his impairment as "mild."[3]

Plaintiff's arguments have little merit because (1) ALJ Hillegas' characterization of the conclusions of these three medical consultants was accurate, (2) ALJ Hillegas carefully considered these records, and (3) ALJ Hillegas did not ignore any medical testimony to the contrary.  First, the ALJ's characterization of Dr. Alban's submissions is accurate.  As summarized in ALJ Hillegas' decision, Dr. Alban noted that Plaintiff avoids activities that involve a significant amount of talking with others but stopped short of saying that Plaintiff could not be in such an environment.  In addition, Dr. Brait's evaluations is also properly reflected in the ALJ's decision as Dr. Brait stated that any impairments to Plaintiff's short-term memory Plaintiff sustained from the 1999 car accident "are very minor and overall are probably not playing a significant role in his life."  (Tr. at 244.)  With respect to Dr. Judith Adams, again the ALJ properly summarized her findings in his decision, as Dr. Adams stated that Plaintiff's "prognosis is relatively good at this time."  (Tr. at 174.)

---

[3] Plaintiff raises two other issues in his brief.  These arguments, however, are directed to the Disability Hearing Officer's Decision of November 26, 2003 and are not at issue in this appeal.  The only issue before this Court is whether ALJ Hillegas' decision of October 21, 2004 (1) applies the proper legal standard and (2) is supported by substantial evidence.

### D. <u>Whether the ALJ Properly Determined that Plaintiff's Disability Ceased as of August 2002</u>

While Plaintiff fails to raise a meritorious argument that ALJ Hillegas' decision was not supported by substantial evidence, this Court must still determine whether ALJ Hillegas applied the proper legal standard in his decision and whether his conclusion that Plaintiff's disability ceased as of August 2002 was supported by substantial evidence. This Court finds that ALJ Hillegas' decision was proper and was supported by substantial evidence. Most importantly for this Court's analysis is that the ALJ's determination that (1) Plaintiff's medical impairment improved and (2) that this improvement was related to his ability to work were both supported by substantial evidence.

#### 1. **Whether Plaintiff's Medical Impairment Improved**

First, in order to find a medical improvement, the Commissioner must compare prior and current medical evidence to determine whether there have been any changes in the signs, symptoms and laboratory findings associated with the claimant's impairment. <u>See</u> 20 C.F.R. § 404.1594(b)(7), (c)(1). In 1992, when Plaintiff was found disabled, Plaintiff was diagnosed with paranoid personality disorder and a history of alcohol dependence. (Tr. at 26, 56.) At that time, Dr. Alban reported that Plaintiff suffered from moderate to severe dysthymic/depressive disorder and that Plaintiff was depressed and isolated. (Tr. at 186, 86.) As such, the Commissioner found

15

that Plaintiff could not return to work as a draftsman or make an adjustment to work which exists in significant numbers in the national economy.

Recent medical evidence related to the Plaintiff, however, shows that Plaintiff's condition has improved.  According to Dr. Alban, who examined Plaintiff in January of 2002, Plaintiff was then working as a math tutor (Tr. at 178) and his memory, concentration and attention were deemed either moderate or good. (Tr. at 181.)  In fact, Dr. Cohen –- Plaintiff's expert who testified at the July 2004 hearing –- stated that he found Plaintiff had only mild limitations due to his mental conditions. (Tr. at 325).  Specifically, Dr. Cohen stated that Plaintiff had "mild depression" and that "[a]ctivities of daily living are mildly impaired, social functioning, maybe moderately impaired . . . ."  (Id.)  In addition, the ALJ noted that, even after his 1992 disability determination due to dysthymic/depressive disorder, Plaintiff never sought treatment for his condition or took any medication for his disorder.  (Tr. at 19.)  Because of this lack of treatment, the medical reports and Plaintiff's testimony, the ALJ found that Plaintiff's account of the impact of his impairment on his ability to work was not persuasive and that he is able to interact with others (although he may prefer not to.)

The Court finds that, after comparing Plaintiff's condition in 1992 to his condition in 2002, ALJ Hillegas' determination that Plaintiff's medical condition has improved so that he is no longer suffering from a disabling mental impairment is supported by substantial evidence.  The testimony of Dr. Alban (citing Plaintiff's improvement) coupled with the fact that Plaintiff never sought any treatment or medication for his disorder, that Plaintiff interacts with the general public without incident and that he works as a math tutor (and returned to work within one year prior to cessation of his disability benefits) strongly suggests that his condition has improved so that it no longer greatly interferes with his functioning.  As such, this Court finds that ALJ Hillegas' determination of a medical improvement was supported by substantial evidence.

### 2. Whether Plaintiff's Improvement Relates to His Ability to Work

In addition to determining that Plaintiff's medical condition improved, the ALJ also found that the medical improvement in Plaintiff's mental impairments related to his ability to work.  See 20 C.F.R. § 404.1594(b)(3).  As discussed above, a medical improvement is related to an individual's ability to work when such an improvement results in an increase in the individual's residual functional capacity to perform basic work activities.  Id.  The Court finds that, again, ALJ Hillegas'

determination that Plaintiff's medical improvement related to his ability to work is supported by substantial evidence.

In 1992, Plaintiff could neither perform his past work as a draftsman nor did he have a residual functional capacity that would permit him to adjust to other jobs in the national economy. ALJ Hillegas' determination that in 2002, however, due to the improvement in Plaintiff's depressive disorder, Plaintiff could perform work in settings limited to small groups and in settings where Plaintiff would have minimal contact with the general public was supported by substantial evidence. The records of Dr. Albans and Dr. Adams state as much. Plaintiff's new residual capacity, ALJ Hillegas correctly concluded, allowed Plaintiff to could perform any of his past relevant jobs, including serving as a math tutor, because this job is wholly consistent with Plaintiff's ability to work in a small group setting with limited contact with the general public. Thus, ALJ Hillegas' conclusion that Plaintiff's medical improvement was related to his ability to work was also supported by substantial evidence.

### III. CONCLUSION

For the reasons stated above, the Commissioner's finding that Plaintiff's "disability" ceased in August 2002 will be affirmed. The accompanying Order is entered.

 **December 21, 2006**                    **s/ Jerome B. Simandle**
Date                                      Jerome B. Simandle
                                          U.S. District Judge